VINCENT MURRAY, JR. *vs.* GOODRICH ENGINEERING CORPORATION, INC. No. 90-P-271. February 22, 1991. *Negligence*, Manufacturer, Duty to warn.

The plaintiff sued the defendant, Goodrich Engineering Corporation, Inc. (Goodrich), in connection with an industrial accident which occurred on the premises of the plaintiff's employer, National Coating Corporation (National Coating). National Coating manufactures coated backing paper for use as a roofing product. The plaintiff was injured when his left hand and arm were pulled into machinery known as "S-wrap" rollers. The "S-wrap" rollers are part of a series of connected machines in a system known as "Treater No. 2," used by National Coating in its manufacturing process. Goodrich manufactured an oven, a component part of "Treater No. 2," and some additional hardware for the system, and performed engineering work necessary to integrate the oven into the system. A Superior Court judge allowed Goodrich's motion for summary judgment on the grounds that its products were not defective, and it had no duty to warn the plain-

tiff or National Coating of any defective design of the "S-wrap" assembly which Goodrich did not manufacture. We affirm.

The judge had before him the following facts. The process performed by "Treater No. 2" was as follows: a large roll of paper was unwound, went under a blade, and liquid was poured on; the blade smoothed out and established the thickness of the coating before the paper entered the dryer; the paper entered an enclosed 100 foot-long oven on a conveyor belt; after the coating was dried onto the paper in the oven, the paper was conveyed out the back end of the oven through a paper-guiding apparatus into the "S-wrap" roller assembly; then the paper was rewound onto a large roll. "Treater No. 2," including the "S-wrap" assembly, was originally designed and manufactured by National Coating in 1954 or 1955. In 1984, National Coating ordered a replacement oven for "Treater No. 2" from Goodrich. In addition to manufacturing and installing the new oven, Goodrich provided the jack shaft drive which connected the oven to the "S-wrap" rollers, furnished a new conveyor chain, and coordinated the drive speeds from the oven to the "S-wrap" rollers. A mechanical engineer employed by Goodrich was on the premises of National Coating on more than fifteen occasions over a period of several months to oversee the installation of the oven. In the course of that work the engineer reviewed blueprints, determined the number of teeth needed in the "S-wrap" roller sprockets, performed other necessary calculations and measurements, and conducted trial runs of "Treater No. 2." The engineer never warned National Coating that the "S-wrap" roller assembly was unsafe.

The plaintiff alleged that "Treater No. 2" was defective because the "S-wrap" assembly had unguarded nip points[1] and was in a pitted and rusted condition, there was no emergency shut-off mechanism, and there were inadequate warnings of the danger. We assume the safety of the "S-wrap" machinery and its causal relation to the plaintiff's injury presented jury issues. Relying on an opinion given by the plaintiff's expert that Goodrich was acting in the capacity of process designer, or codesigner, for the entire "Treater No. 2" assembly line, the plaintiff contends that there was also a triable issue whether Goodrich should have recognized the hazards associated with the "S-wrap" and either corrected them, brought them to the attention of National Coating, or refused to perform the installation of the oven into the system.

If Goodrich was the designer of the over-all system, it owed a duty to the plaintiff, a foreseeable user of the system, to assure that the machinery was reasonably safe and to warn of any unreasonable risks. To decide whether Goodrich was the designer of "Treater No. 2" requires a conclusion based on underlying facts, none of which is in dispute. It is true that

---

[1]A nip point is "an in-running juncture between two adjacent cylinders moving in opposite directions." *Fahey* v. *Rockwell Graphic Sys., Inc.*, 20 Mass. App. Ct. 642, 644 (1985).

Goodrich's involvement in "Treater No. 2" was more than simply manufacturing and supplying a nondefective component part. Thus, neither *Mathers* v. *Midland-Ross Corp.*, 403 Mass. 688, 691 (1989), nor *Mitchell* v. *Sky Climber, Inc.*, 396 Mass. 629, 631 (1986), is dispositive. We conclude, however, that Goodrich, through its engineer, was involved with parts of the assembly other than the oven, not as a designer or codesigner of the over-all system, but only as necessary to integrate the oven into the system and coordinate the speed of its various parts. Contrast *Union Supply Co.* v. *Pust*, 196 Colo. 162 (1978). We think no reasonable jury could find that Goodrich's involvement, in the circumstances, gave rise to the duty to warn National Coating that the "S-wrap" rollers were unsafe or to any other duty of which the plaintiff claims a breach on the part of Goodrich.

The plaintiff also argues that the speed with which the drive of the "S-wrap" was moving was a "substantial contributing factor" in the accident and that since the defendant was obligated to coordinate the speed of the drive for the "S-wrap" with the speed of the drive from the oven, the defendant could be liable on that basis. The plaintiff's own expert, however, stated that there was nothing in the coordination of the speeds and the drive itself that contributed to the accident. Nor was there any evidence that the speed was excessive.

*Judgment affirmed.*

*Edward J. O'Brien* for the plaintiff.
*William P. Smith* for the defendant.